ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV - 7 2017    3:51

CLERK, U.S. DISTRICT COURT
By
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRISTOPHER ROBERT WEAST,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

NO.   4:17-CV-802-A
      (4:14-CR-023-A)

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Respectfully submitted,

John R. Parker
United States Attorney

Timothy W. Funnell
Assistant United States Attorney
Wisconsin State Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102-6897
Phone 817-252-5252
Tim.Funnell@usdoj.gov

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 ...................................... 1

STATEMENT OF THE CASE .......................................................................... 1

STATEMENT OF THE ISSUES ....................................................................... 3

ARGUMENT AND AUTHORITES ................................................................. 5

    1.     Weast fails to prove that his attorneys provided ineffective
           representation ................................................................................... 6

           A.     Weast's claim that he would have pled guilty but for counsel's
                  alleged misadvice is defeated by the record ...................................... 8

           B.     Weast's remaining ineffective-assistance-of-counsel claims should
                  be summarily denied ....................................................................... 14

    2.     Weast's remaining claims are defaulted, not cognizable, and meritless .... 17

CONCLUSION ............................................................................................... 19

CERTIFICATE OF SERVICE........................................................................ 20

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                    **Page(s)**

*Clay v. United States*, 537 U.S. 522 (2003) ........................................................................ 3

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ........................................................................ 7

*Faretta v. California*, 422 U.S. 806 (1975) .................................................................... 9, 11

*Massaro v. United States*, 538 U.S. 500 (2003) ................................................................ 6

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000) .............................................................. 7

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ........................................................................ 7

*Strickland v. Washington,* 466 U.S. 668 (1984) .......................................................... 6, 7, 9

*United States v. Addonizio*, 442 U.S. 178 (1979) .............................................................. 5

*United States v. Arledge*, 597 F. App'x 757 (5th Cir. 2015) ......................................... 7, 8

*United States v. Bobb*, 577 F.3d 1366 (11th Cir. 2009) .................................................. 19

*United States v. Capua*, 656 F.2d 1033 (5th Cir. Unit A 1981) ......................................... 5

*United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998) ............................... 5, 7, 12, 15

*United States v. Dudeck*, 657 F.3d 424 (6th Cir. 2011) .................................................. 19

*United States v. Frady*, 456 U.S. 152 (1982) .................................................................... 5

*United States v. Guerra*, 94 F.3d 989 (5th Cir. 1996) ..................................................... 18

*United States v. Kalish*, 780 F.2d 506 (5th Cir. 1986) ............................................... 16, 18

*United States v. Mondragon-Santiago*, 564 F.3d 357 (5th Cir. 2009) ............................ 16

*United States v. Phillips*, 210 F.3d 345 (5th Cir. 2000) .................................................. 16

*United States v. Placente*, 81 F.3d 555 (5th Cir. 1996) ..................................................... 5

**Federal Cases**                                                                    **Page(s)**

*United States v. Reed*, 719 F.3d 369 (5th Cir. 2013) ................................................... 6, 7, 8

*United States v. Stewart*, 207 F.3d 750 (5th Cir. 2000) ...................................................... 7

*United States v. Sturm*, 673 F.3d 1274 (10th Cir. 2012) ................................................... 19

*United States v. Weast*, 811 F. 3d 743 (5th Cir. 2016)................................................... 3, 15

*United States v. Weast*, 137 S. Ct. 126 (2016) .................................................................. 3

*United States v. Williamson*, 183 F.3d 458 (5th Cir. 1999) ............................................. 17

**Federal Statutes**

28 U.S.C. § 2255(f)(1) ...................................................................................................... 3

**Federal Sentencing Guidelines**

USSG Ch. 5, Pt. A............................................................................................................ 14

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

The Court should deny Weast's motion because he fails to prove that he received ineffective assistance of counsel, and his remaining claims are defaulted, not cognizable, and meritless.

## STATEMENT OF THE CASE

Investigation by Fort Worth police officers revealed that Weast used online peer-to-peer software to obtain and share child pornography.  (PSR ¶¶ 15-28.)[1]  He was indicted in February 2014 for possession of child pornography, followed by three superseding indictments that were filed from May through July 2014, each charging him with two counts: possession of child pornography on July 10, 2012, and receiving child pornography on June 28, 2012.  (CR Nos. 57; 85; 103.)[2]

Throughout the proceedings, Weast asserted his innocence, refused to cooperate with counsel and a court-appointed forensic examiner, invoked his right to self-representation, denied that he was the "true defendant," filed "counterclaims" against the government, moved to dismiss the charges based on the Court's purported lack of jurisdiction, sought "emergency writs of prohibition and automatic stays," and requested the "bond policy numbers" of the prosecutor, probation officer, defense counsel, and

---

[1] "CR No. __" refers to the docket of the underlying criminal proceeding, *United States v. Weast*, No. 4:14-CR-023-A.  "CV No. __" refers to the docket of this Section 2255 action.  Other documents, including the presentence report ("PSR"), are referenced by title.

[2] The three superseding indictments were essentially the same except for making corrections to the applicable statutory subsections, adding three still images—for a total of six—to the possession charge, and rephrasing the description of the sexually explicit conduct depicted in the video file that formed the basis for the receipt charge.

presiding judges.  (*See* CR Nos. 26; 33; 35; 38-40; 43; 49-50; 55; 59; 61; 108; ; 110; 112;

125; 127; 135-37; 147-48; 153; 159; 161; 166; 175-81; 197-99; 201-03; 216-17; 219;

225; 229-31; 236-39; 241; 247-49; 251-56; 264; 266-69; 272-81; 285-90; 292; 311.)  His

obstructive behavior ultimately led the Court to terminate self-representation, re-appoint

counsel, order a competency examination, and, after finding that Weast was not

incompetent, exclude him from the courtroom during trial and sentencing.  (CR No. 110;

125; 161, 241; 243; 311.)

Tellingly, at Weast's pretrial competency hearing on July 8, 2014, the forensic

examiner opined that Weast's disruptive conduct was "both a tactic [and] a function of

the passion with which he wishe[d] to avoid a negative outcome [in the case]."  (CR No.

311 at 24.)  When the Court asked the examiner if he believed that Weast was "doing it

on purpose to obstruct the trial," the examiner replied, "I do."  (*Id.*)  The Court

determined that the case would proceed because there was insufficient evidence to find

Weast incompetent.  (*Id.* at 28.)

After a two-day trial on July 28-29, 2014, the jury found Weast guilty of both

counts in the third superseding indictment.  (CR Nos. 125; 283.)  In November 2014, the

Court sentenced him to a total of 360 months' imprisonment, which was also the

recommended term under the advisory guidelines.  (CR Nos. 283; 318 at 28.)[3]

On direct appeal, the Fifth Circuit rejected Weast's claims that (i) officers illegally

seized evidence from his home, (ii) the Court violated his right to self-representation,

---

[3] Weast's guideline range of 360 months to life was capped at 360 months due to the combined statutory maximum of 30 years' imprisonment applicable to his two offenses of conviction.  (PSR ¶ 89.)

(iii) the Court erred by limiting the testimony of Bill McGregor, the defense's digital

forensics specialist, and (iv) the prosecutor's closing argument violated his right not to

testify. *See United States v. Weast*, 811 F. 3d 743, 747-53 (5th Cir. 2016).  The Supreme

Court denied certiorari review on October 3, 2016.  137 S. Ct. 126 (2016).

Weast timely filed the present motion on October 3, 2017.  (*See* CV No. 1 at 30

(containing a date stamp indicating that Weast's motion was deposited with "U.S.

Postage paid" on "Oct. 3, 2017")); *see also* 28 U.S.C. § 2255(f)(1); Rule 3(d) Governing

Section 2255 Proceedings; *Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality [for

purposes of Section 2255] attaches when this Court affirms a conviction on the merits on

direct review or denies a petition for a writ of certiorari, or when the [90-day time period]

for filing a certiorari petition expires.").

## STATEMENT OF THE ISSUES

In Ground One, Weast alleges that his trial and appellate attorneys provided

ineffective representation in the following manner:

- advising him that the government was offering a "10-year plea deal" but then

   misinforming him that he only faced a 10-year maximum at trial, causing him to

   reject the purported offer because there was no incentive to take it;

- not objecting to the Court's "closure of the jury voir dire to the public";

- failing to argue on appeal that trial counsel's "repetitious and futile objections . . .

   sen[t] a message to the jury that the [Court] believe[d] [Weast was] guilty";

- arguing on appeal that the government's closing argument amounted to "prosecutorial misconduct" rather than "prosecutorial error," because the latter did "not turn on the existence of maliciousness and malevolent intent [but] focuse[d] on the adverse effect on [the] right to a fair trial";

- not objecting at sentencing and on direct appeal to the Court's "draconian sentencing . . . as unreasonable and excessive";

- failing to investigate that he "had actually reported [to law enforcement] instances of child pornography on three different occasions [that he] had stumbled upon on the internet"; and

- failing to investigate his competency to proceed, which prevented him from understanding and participating in the proceedings.

(CV No. 1 at 15-19.)

In Grounds Two through Five, respectively, Weast alleges that the Court erred by:

- applying the five-level enhancement for distributing child pornography under USSG § 2G2.2(b)(3)(B);

- refusing to allow defense counsel to question the defense's computer expert regarding possible viruses on his computer;

- imposing an unreasonable and excessive sentence; and

- refusing to allow his attorneys to withdraw.

(*Id.* at 19-27.)

Lastly, in Ground Six, Weast claims that his convictions violate double jeopardy because possession of child pornography is a lesser-included offense of receipt of child pornography. (*Id.* at 28.)

## ARGUMENT AND AUTHORITIES

### Standard of Review

Motions brought pursuant to 28 U.S.C. § 2255 may only seek to vacate a sentence for particular types of errors. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). That section provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (internal quotation marks omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981). And a motion under Section 2255 "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

After conviction and the exhaustion or waiver of all appeals, the reviewing court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164. A prisoner is not entitled to an evidentiary hearing on his Section 2255 motion unless he

"presents independent indicia of the likely merit of his allegations." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013).

**Discussion**

1. **Weast fails to prove that his attorneys provided ineffective representation.**

Ineffective-assistance-of-counsel claims can be raised under Section 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Counsel's effectiveness is evaluated under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires Weast to prove deficient performance and prejudice.

"First, [Weast] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* He must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.*

Second, in order to prove prejudice, Weast must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Thus, "[t]he benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citing *Strickland*, 466 U.S. at 686 (emphasis in *Cullen*)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). As to each claim, Weast must satisfy both the deficient-performance and prejudice prongs. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The Court need not address both components if Weast makes an insufficient showing on one. *Id.*

Simply making "conclusory allegations" of deficient performance and prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *see also United States v. Arledge*, 597 F. App'x 757, 759 (5th Cir. 2015) (unpublished) ("When deciding whether an affidavit supporting a § 2255 motion may be discredited or given less weight without an evidentiary hearing, this Court has looked to factors such as whether an affidavit is speculative, conclusory, plainly false, or contradicted by the record." (citing *United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013)); *Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (holding that reliable, independent indicia of the likely merit of a claim will entitle a movant to an evidentiary hearing, unless "the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record").

Applying these principles here, Weast fails to meet his burden under *Strickland*.

**A.    Weast's claim that he would have pled guilty but for counsel's alleged misadvice is defeated by the record.**

Weast alleges that "at some point" defense counsel approached him with a "10-year plea deal" from the government, but at the time, "counsel had not gone over [with him] the sentencing guidelines applicable to the charges in the third superseding indictment." (CV No. 1 at 15.)  Weast further alleges that during this meeting, counsel misadvised him that he faced only a 10-year maximum sentence upon conviction at trial, thereby causing him to reject the "10-year-plea deal" because he had no incentive to plead guilty. (CV No. 1 at 15.)

Weast's uncorroborated, after-the-fact allegations cannot withstand scrutiny because the record proves that he knew that he faced up to 30 years' imprisonment—not 10 years—upon conviction at trial.  Moreover, because Weast repeatedly asserted his innocence, obstructed the proceedings, and would have faced a guideline range far exceeding 10 years even if he had pled guilty, he fails to show that he would have pled guilty pursuant to the alleged "10-year plea deal" and that the purported agreement would have been accepted by the Court.  Because Weast cannot show deficient performance and resulting prejudice, the claim should be denied without a hearing.

Weast does not specify where and when his purported 10-year-plea-deal meeting with counsel occurred, nor does he offer corroboration of its occurrence and content.  The vagueness of his unsupported allegation provides reason to reject it, *see Arledge*, 597 F. App'x at 759, and *Reed*, 719 F.3d at 374, particularly in light of the "strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.

Instead of providing the requisite specificity, Weast merely contends that counsel's alleged misadvice was provided "at some point" after the filing of the third superseding indictment. (CV No. 1 at 15.) The first and second superseding indictments were respectively filed on May 14, 2014, and June 11, 2014, and the third superseding indictment was filed on July 1, 2014. (CR Nos. 57; 85; 103.) Weast was representing himself when all three superseding indictments were filed, and he does not claim that he misunderstood the 30-year maximum penalties that he faced under the first and second superseding indictments. And the third superseding indictment, like the superseding indictments it replaced, contained the same two counts—possession of child pornography on July 10, 2012, and receipt of child pornography on June 28, 2012—and the same aggregate maximum of 30 years in prison. (*Compare* CR No. 105, *with* CR Nos. 57; 83.) It defies reason that Weast correctly understood the penalties in the first two superseding indictments but not those presented by the same charges in the third superseding indictment.

Further review of the case's history provides additional context for the Court to reject Weast's "10-year plea deal" allegation as facially incredible. His criminal case was originally assigned to the Honorable Terry R. Means. At a *Faretta*[4] hearing before the

---

[4] *Faretta v. California*, 422 U.S. 806, 835 n. 46 (1975) (holding that a defendant has the right to represent himself, provided that he does so "with eyes open" after knowingly and voluntarily waiving the right to counsel, but also recognizing that self-representation "is not a license to abuse the dignity of the courtroom [or] not to comply with relevant rules of procedural and substantive law") (internal quotation marks and citations omitted).

magistrate judge on April 22, 2014, Weast successfully invoked his right to self-representation. (CR Nos. 43; 116.) The case was subsequently reassigned from Judge Means to this Court, which, on May 28, 2014, convened a hearing to revisit the issue of Weast's self-representation. (CR Nos. 67-69; 108.) By that time, the government had filed the first superseding indictment. (CR No. 57.) At the May 28 hearing, both the Court and the government notified Weast that he faced up to 30 years' imprisonment if convicted of the two charges in the superseding indictment. (CR No. 108 at 5-9.) The Court also admonished Weast that "the consequences of the new indictment" may cause him "to reconsider the issue of whether [to] represent [him]self[.]" (*Id.* at 5.) Weast remained committed to self-representation despite receiving explicit notice of the 30-year prison term that he faced upon conviction. (*Id.* at 5-9, 11-12.)

At the same hearing, the Court did not rule definitively on Weast's continued self-representation because it questioned his mental competency to proceed. (*Id.* at 12.) The Court subsequently granted the government's motion for a competency evaluation, re-appointed defense counsel for purposes of the competency determination, and, after receiving the appointed examiner's forensic report, convened a hearing on July 8, 2014, to determine Weast's competency and revisit the issue of self-representation. (CR No. 110.) Before and after the July 8 hearing, his appointed counsel filed written motions to withdraw because Weast had "unequivocally indicated his desire to represent himself" and "refused to speak with [counsel]" despite counsel's "multiple" attempts to confer with him. (CR Nos. 107; 111-12.) Counsel had concluded that because of the "lack of communication" with Weast despite her repeated efforts, she was "stymied in [her]

representation without having the opportunity to consult with Mr. Weast regarding his defense, his right to testify, and his confrontation rights." (CR No. 112.) The Court held the motions to withdraw in abeyance until it made a competency finding. (CR No. 110 at 9.) Counsel's written assertions, however, make clear that she had no substantive communications with Weast, further discrediting his allegation that "at some point" after the filing of the third superseding indictment they discussed a plea offer from the government.

At the July 8 hearing, Weast participated by two-way audio feed from a separate room because he refused to comply with the Court's request not to disrupt the proceeding. (*Id.* at 14-17.) The Court heard testimony from Dr. Randall Rattan, the forensic psychologist appointed to evaluate Weast's competency. (*Id.* at 17.) Dr. Rattan testified that although Weast refused to be interviewed, the doctor was able to determine from Weast's filings, recorded phone calls, and interactions with others in the institution and community that "there was insufficient information to support a clinical inference that [Weast] has a severe psychiatric disorder [or] a severe mental disease or defect." (*Id.* at 19-20.) Dr. Rattan's conclusion was that there was "no predicate to say that [Weast was] not competent." (*Id.* at 20.) Dr. Rattan was questioned by the government, Weast's appointed counsel, and the Court, which asked whether Weast was able to control his in-court behavior. (*Id.* at 24.) Dr. Rattan responded that Weast's disruptive conduct was "both a tactic [and] a function of the passion with which he wishe[d] to avoid a negative outcome [in the case]." (*Id.*) When the Court questioned whether Weast was "doing it on purpose to obstruct the trial," the doctor replied affirmatively. (*Id.*) The Court

determined that the case would proceed because there was insufficient evidence to find
Weast incompetent. (*Id.* at 28.)

Next, and particularly fatal to Weast's current allegation that he misunderstood the
statutory penalties he faced upon conviction, the Court conducted an arraignment on the
third superseding indictment. Because Weast had refused to accept service of the
indictment, the prosecutor had placed a copy of it on the table where Weast was seated
and listening to the proceeding. (*Id.* at 29-30.) The Court instructed Weast to pay
attention so that he would "know exactly what the Third Superseding Indictment
charge[d] against [him]." (*Id.* at 30.) At the Court's direction, the prosecutor read the
indictment to Weast and detailed the penalties that he faced as to each count upon
conviction, totaling 30 years' imprisonment. (*Id.* at 30-41.) Following the competency
hearing and arraignment, the Court issued a 39-page order that painstakingly detailed the
case's history. (CR No. 125.) In the order, the Court concluded that Weast had waived
his right to self-representation and it was necessary to re-appoint counsel because
Weast's conduct "appear[ed] to be a deliberate and calculated defense strategy to so
disrupt the proceedings that they [could] not go forward in a meaningful way." (*Id.* at 4,
38-39.)

In sum, the undisputed record, including the Court's prior findings and
conclusions regarding Weast's deliberate and obstructive conduct, provide ample
evidence for it to reject his current allegation of an ill-fated "10-year plea deal." *See*
*Cervantes*, 132 F.3d at 1110. The record proves that Weast knew the correct statutory
maximum penalties that he faced under the third superseding indictment, and he therefore

fails to rebut the strong presumption that counsel provided effective representation, including any discussion regarding whether to plead guilty.

Moreover, even assuming but not conceding that Weast was misinformed by counsel as he now alleges, he cannot show prejudice for two reasons. First, Weast's obstructive conduct, statements, and numerous filings throughout the criminal case demonstrate conclusively that he had no intention to plead guilty. As previously noted, Weast steadfastly asserted his innocence, refused to cooperate with counsel and a court-appointed forensic examiner, invoked his right to self-representation, denied that he was the "true defendant," filed "counterclaims" against the government, moved to dismiss the charges based on the Court's purported lack of jurisdiction, sought "emergency writs of prohibition and automatic stays," and requested the "bond policy numbers" of the prosecutor, probation officer, defense counsel, and presiding judges. (*See* CR Nos. 26; 33; 35; 38-40; 43; 49-50; 55; 59; 61; 108; ; 110; 112; 125; 127; 135-37; 147-48; 153; 159; 161; 166; 175-81; 197-99; 201-03; 216-17; 219; 225; 229-31; 236-39; 241; 247-49; 251-56; 264; 266-69; 272-81; 285-90; 292; 311.) Second, Weast fails to prove that a 10-year plea agreement would have been accepted by the Court. There is no support in the record to conclude that the Court would have considered 10 years' imprisonment to be a sufficient sentence, particularly since it rejected defense counsel's motion for a "significant downward variance," (CR No. 318 at 34), and the advisory guidelines would have far exceeded 120 months even if Weast had pled guilty.[5]

---

[5] Pleading guilty to one or both counts of the third superseding indictment would not have changed Weast's base offense level or the applicability of the various enhancements. (*See* PSR ¶¶ 40-45.) And,

Because Weast fails to prove that counsel performed deficiently and that he suffered resulting prejudice, his 10-year-plea-deal claim should be denied.

**B.      Weast's remaining ineffective-assistance-of-counsel claims should be summarily denied.**

Weast raises six other claims of ineffective representation, but each should be summarily denied as conclusory and meritless.

Weast claims that counsel failed to object to the Court's "closure of the jury voir dire to the public." (CV No. 1 at 15.) Contrary to his claim, jury selection was not closed. Instead, approximately three weeks after the trial, the Court entered an order to seal the voir dire proceedings "to protect personal information of the jurors who served in the trial [and those] who served on the panel from which the jury was selected." (CR No. 228.) Considering Weast's well-documented pattern of filing frivolous claims for damages against virtually anyone connected to the case and his multiple requests for identifying information of those whom he targeted for harassment, the Court's order to seal was well-founded. (*See* CR Nos. 38; 49; 125; 153; 176-78; 181; 198; 231; 272; 285.)

Weast next claims that trial counsel's "repetitious and futile objections . . . sen[t] a message to the jury that the [Court] believe[d] [Weast was] guilty." (CV No. 1 at 17.)

---

by the time the third superseding indictment was filed, Weast could not reasonably expect to receive an acceptance-of-responsibility reduction or avoid an obstruction-of-justice enhancement. (*See id.* ¶¶ 48, 51.) Even if he had, his total offense level would have been 37 rather than 42, which, combined with criminal history category I, would have resulted in an advisory guideline range of 210 to 262 months— approximately twice as much as the purported "10-year plea deal." (*See* USSG Ch. 5, Pt. A, sentencing table.) Weast fails to cite any evidence in the record that the Court would have accepted a plea agreement that essentially halved the guideline range.

Liberally construed, Weast also appears to claim that appellate counsel was ineffective by not raising the issue on direct appeal. Because he provides no examples to evaluate the claim on the merits, and he makes no showing that any particular objection would have altered the outcome of his case, the allegation is wholly conclusory.

Next, Weast claims that appellate counsel was ineffective by arguing that the government's closing argument amounted to "prosecutorial misconduct" rather than "prosecutorial error," because the latter did "not turn on the existence of maliciousness and malevolent intent [but] focuse[d] on the adverse effect on [the] right to a fair trial." (CV No. 1 at 17.) Even under a liberal construction, the government cannot discern the factual and legal basis of Weast's claim. He mentions the "U.S. Supreme Court decision in People v. Hill," (*id.*), but provides no date or citation for the decision. Regardless, Weast's appellate counsel did, in fact, argue on appeal that the prosecutor's closing argument violated Weast's "Fifth Amendment right not to testify and compelled a mistrial." *Weast*, 811 F.3d at 752. The Fifth Circuit examined the following three factors to determine whether the prosecutor's alleged misconduct cast "serious doubt on the verdict": "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* The appellate court rejected Weast's arguments, reasoning that the prosecutor's remarks did not rise to a constitutional violation, but assuming that the comments were improper, they still did not "cast[] serious doubt on the verdict." *Id.* at 753. Because the closing-argument issue was thoroughly litigated on direct appeal, and Weast fails to show that appellate counsel's arguments on the topic

were deficient and prejudicial, he cannot successfully relitigate the matter under Section 2255 by merely changing the label to an ineffective-assistance-of-counsel claim. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.").

Weast also alleges that counsel did not object at sentencing and on direct appeal to the Court's "draconian sentencing . . . as unreasonable and excessive." (CV No. 1 at 18.) The record, however, proves that after sentence was imposed, Weast's counsel "object[ed] to the sentence as procedurally and substantively unreasonable for the reasons set forth in [counsel's] objections and [in oral argument at sentencing.] (CR No. 318 at 51.) Thus, his claim is factually baseless. And, although appellate counsel did not challenge the sentence, Weast's conclusory allegation does not demonstrate that the decision amounted to ineffective representation. Indeed, as appellate counsel was undoubtedly aware, this Court had provided ample reason to impose the within-guidelines sentence, (CR No. 318 at 44-48), which was entitled to a presumption of reasonableness on appeal, *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009). *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) ("Counsel is not deficient for not raising every non-frivolous issue on appeal," but instead, the governing standard is objective reasonableness, which requires counsel to "research relevant facts and law" and raise "[s]olid, meritorious arguments based on directly controlling precedent") (internal quotation marks omitted).

Weast next alleges that counsel failed to argue that he "had actually reported [to law enforcement] instances of child pornography on three different occasions [that he] had stumbled upon on the internet." (CV No. 1 at 18.) Weast fails to produce the alleged police reports and explain their relevance, and he fails to show that, had such information been presented, it would have had any effect on his trial. Accordingly, the claim is wholly conclusory.

Weast's final allegation is that counsel did not investigate his competency to proceed, which prevented him from understanding and participating in the proceedings. (CV No. 1 at 18-19.) Because Weast's competency was timely raised before trial, and the Court—based on the forensic examiner's report and testimony—found that there was insufficient evidence to demonstrate that Weast was incompetent, (*see* CR No. 110), he fails to demonstrate deficient performance and resulting prejudice.

## 2.     **Weast's remaining claims are defaulted, not cognizable, and meritless.**

In Ground Two, Weast alleges that the Court erred by applying the five-level enhancement for distributing child pornography under USSG § 2G2.2(b)(3)(B). (CV No. 1 at 19.) Challenges to the sentencing court's guideline calculation are not cognizable under Section 2255. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (holding that "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed," and "[m]isapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions").

In Ground Three, Weast claims that the Court erred by refusing to allow defense counsel to question the defense's computer expert regarding possible viruses on his computer. (CV No. 1 at 19-20.) Because the claim was already litigated on direct appeal, Weast cannot relitigate it here. *Kalish*, 780 F.2d at 508.

In Ground Four, Weast challenges the Court's imposition of sentence as "unreasonable and excessive." (CV No. 1 at 21.) The claim is barred by procedural default, and, as previously argued, Weast cannot show cause and prejudice to avoid default because appellate counsel was not ineffective in failing to raise the issue. *See United States v. Guerra*, 94 F.3d 989, 993-94 (5th Cir. 1996) (holding that Section 2255 does not permit arguments that could have been raised on direct appeal unless the movant shows cause and prejudice to avoid procedural default).

In Ground Five, Weast argues that the Court erred by refusing to allow his attorneys to withdraw. (CV No. 1 at 27.) He alleges that his attorneys lacked experience in child pornography cases and suffered under a conflict of interest because Weast did not trust them, had filed lawsuits against them, and "exchanged words [with them] at the county jail." (*Id.*) The record, however, shows that counsel attempted to withdraw based on Weast's repeated requests to engage in self-representation, which the Court denied in a thorough and detailed order after it conducted numerous hearings on the matter. (CR Nos. 108; 110; 125; 243.) As to counsel's purported lack of experience and potential bias against Weast, he fails to specify any portion of counsel's representation at trial or sentencing that was deficient.

Lastly, in Ground Six, Weast claims that his convictions violate double jeopardy because possession of child pornography is a lesser-included offense of receipt of child pornography. (*Id.* at 28.) The claim is meritless because Weast's convictions were based on different images that he possessed and received on different dates. (CR No. 103.) *United States v. Sturm*, 673 F.3d 1274, 1288 (10th Cir. 2012) (rejecting double jeopardy argument for possession and receipt of child pornography where offenses occurred on different dates and were supported by different evidence); *United States v. Bobb*, 577 F.3d 1366, 1375 (11th Cir. 2009) (same); *see also United States v. Dudeck*, 657 F.3d 424, 430-31 (6th Cir. 2011) (same, but remanding for district court to determine whether two acts occurred where indictment dates overlapped).

## CONCLUSION

Weast's motion should be denied.

Respectfully submitted,

John R. Parker
United States Attorney

Timothy W. Funnell
Assistant United States Attorney
Wisconsin State Bar No. 1022716
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102-6897
Phone 817-252-5252
Tim.Funnell@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 7, 2017, I filed this response with the clerk of court for the U.S. District Court, Northern District of Texas.  I also certify that a copy of this response was served on Christopher Robert Weast, Register No. 47797-177, FCI Hazelton, P.O. Box 5000, Bruceton Mills, WV 26525, by certified mail.

Timothy W. Funnell
Assistant United States Attorney