ORIGINAL

IN THE DISTRICT COURT OF THE UNITED STATES

CHRISTOPHER ROBERT WEAST, Petitioner,

v.

UNITED STATES OF AMERICA, Respondent.

No. 4:17-CV-802-A

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 22 2018 2:24 pm
CLERK, U.S. DISTRICT COURT
By ______
Deputy

REPLY TO GOVERNMENT'S RESPONSE

Respectfully Submitted,

By: Christopher Robert

Christopher Robert Weast, agent
Federal COrrectional Institution
P.O. Box 5000
Bruceton Mills, West Virginia 26525

PETITIONER'S RESPONSE PERTAINING TO GROUND ONE

The Court should Grant Petitioner's Motion because Petitioner did in fact receive ineffective assistance of counsel as explained below or in the alternative, the Court should grant Petitioner an Evidentiary hearing to enlarge the record and determine the facts of Petitioner's allegations regarding counsel's ineffective assitance.

Petitioner's Ground One Response

On page 8 of the Government's response, the Government points to Petitioner's mistake wherein Petitioner mistakenly referred to the Third superseding indictment when in fact the one and only plea offer that was made by the Government was made on the original indictment which the Government seems to have forgotten in their response. Petitioner was originally charged under 18 USC § 2252(a)(4)(B), Possession of a Visual Depiction of Sexually Explicit Conduct which carried a maximum sentence of 10 years. Petitioner was arrested on February 21, 2014, held in Parker County jail for three and half weeks, transferred to Palo Pinto County where Petitioner was held for another three and half weeks, while at Palo Pinto County jail, Counsel made one visit to see Petitioner on or about March 13, 2014 to March 31, 2014. On or about April 3, 2014 to April 10, 2014, Petitioner was trasfered to FCI Fort Worth wherein Petitioner received the second visit from Counsel. It was during one of those two meetings wherein Counsel mentioned that the Government had made an offer of 10 years. Petitioner asked Counsel what the maximum amount of time was that he could receive under the indictment, to which Counsel responded, "the maximum sentence you can receive is 10 years." Petitioner then asked Counsel why he would take a 10 year plea if the plea was for the maximum sentence he could receive for the charge. Counsel never alluded to guidelines and the fact that Petitioner would have faced a substantially lower sentence due to the fact that Petitioner had no criminal history nor did Counsel explain that by pleading, Petitioner would

also qualify for a 3-point reduction for acceptance of responsiblity on the guidelines table which would have limited Petitioner's sentencing exposure further. Counsel's failure to advise Petitioner that she could also seek an 11(c)1(c) binding plea agreement was ineffective assitance. By failing to advise Petitioner of the "bare minimum" required of Federal Public Defenders, Petitioner's decision to proceed to trial was not based on sound advice of competent legal counsel. Had Counsel advised Petitioner of the foregoing guidelines table, 3-point acceptance of responsiblity and availability of 11(c)(1)(c) binding pleas, Petitioner would have plead guilty and taken the plea. Furthermore, the government's contention that there is no proof on the record that the court would have been willing to accept a plea is rebutted by the very record itself. Also, the Government's contention that Petitioner's alleged "obstructive conduct, statements, and filings throughout the criminal case demonstrate conclusively that he had no intention to plead guilty," is rebutted by the same conversation of the trial. On page 6 of 22 of the Trial transcript, Doc. 306, Lines 9-19, the following colloquy took place:

> Ms. Saad: Your Honor, there seems to be an indication that there might be a possible plea as opposed to a trial, and he would like to meet with us to talk about that.
>
> The Court: Okay. We'll take a -- let's assume there was a plea. It would have be without a plea agreement. It would be to all counts of the indictment.
> Let's assume there was. How long would it take to prepare a factual resume?
>
> Ms. Saleem: Approximately 30 minutes we should be able to do that.
>
> The Court: Okay. We've got a jury panel waiting. So let's don't waste time. I'll give you ten minutes to go down and talk to him.
>
> Ms. Saad: Yes, Your Honor.
>
> The Court: We'll take a recess for ten minutes. Why don't you put in motion getting a factual resume prepared in case that is what he decides to do.
>
> Ms. Saleem: Yes, Your Honor.

This colloquy is conclusive proof that the Court as well as the Prosecutor, were

indeed, willing to accept a plea as well as proving beyond doubt that Petitioner was, indeed ready to plead to the charge because there very request to speak about a plea goes to the intent of Petitioner. Therefore, due to Counsel's ineffective assitance in failing to advise Petitioner on the guidelines table when the Government originally offered the 10-year plea deal, different plea agreements available to Petitioner, and the 3-point acceptance of responsibility, Petitioner was prejudiced because Petioner would have taken the 10-year plea agreement had he been advised about these benefits prior to turning said offer down because he was advised, albeit incorrectly, that the deal was for the maximum amount of time Petitioner faced at the time of the plea offer. Furthermore, Counsel was ineffective in failing to object to the Judge's participation in the plea process wherein the Judge stated that any plea would have to be without a plea and a plea to all counts of the indictment.

The government makes repeated mention of Petitioner's alleged disruptive conduct however, Petitioner points to the definition listed in Black's Law dictionary, 9th Edition, page 271, "Disruptive Conduct" which is listed under Conduct states:

> disruptive conduct. (1959) Disorderly conduct in the context of a governmental proceeding. See CONTEMPT.
>
> disorderly conduct. (17c) Behavior that tends to disturb the public peace, offend public morals, or undermine public safety. SEE BREACH OF THE PEACE.

Furthermore, Petitioner points to the definition found in Wharton's Criminal Law's for "disorderly conduct." The definition states:

> Disorderly conduct. Fighting or violent or disruptive behavior; making loud or unreasonable noise; using offensive, abusive, obscene language, or making an obscene gesture." Charles E. Torcia, 4 Wharton's Criminal Law 505 (15th ed. 2006).

According to the above mentioned definitions, Petitioner's behavior and/or conduct was not disorderly nor disruptive. Petitioner never once fought nor was violent. Petitioner did not make loud or unreasonable noise, use offensive, abusive, obscene language, or make obscene gestures while in the courtroom. Petitioner was accused of being disruptive and disorderly when he simply attemted to ask the Court questions

The Government contends, although incorrectly, that voir dire was not closed to the public and therefore, Petitioner is not entitled to relief due to Counsel's failure to object at the trial level as well as Counsel's failure to include the complete closure in direct appeal on petitioner's behalf. However, Petitioner maintains, as a matter of fact, that if unsealed, the transcript from the voir dire would, in fact, show that the Honorable John McBryde told Petitioner's family as well as all other spectators in the court to step outside because the Court needed the space for the jury pool. This was an affirmative act by the trial court meant to exclude persons from the courtroom. United States v. Al-Smadi, 15 F.3d 153, 155(10th Cir. 1994). Futhermore, "where a district court affirmatively decides to close a trial to the public, the Supreme Court requires the district court to follow procedures to ensure the balancing of interests. A complete closure of proceedings is only justified where: (1) the party seeking to close the trial advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court has considered reasonable alternatives to closure; and (4) the court makes findings adequate to support the closure. Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 2216, 81 L. Ed. 2d 31(1984). In the instant case, Judge McBryde did not hold a Waller test hearing before closing the voir dire claiming "insufficient seating for spectators and family members. Without first seeing the voir dire transcript, Petitioner can only speculate that Judge McBryde stated that this closure would be temporary which might explain Petitioner's Counsel's failure to object to such a closing. However, Petitioner's family's recently filed Affidavits of Facts serves as evidence that the courtroom was indeed closed completely for the entirety of the voir dire and jury selection process due to the fact that the United States marshals were actively preventing Petitioner's family as well as anyone else from the public or press from entering the courtroom by telling them the courtroom was closed and noone was allowed in while jury selection was in progress.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a...public trial." U.S. Const. amend. VI. The supreme court has held that this public-trial right extends to voir dire. Presley v. Georgia, 558 U.S. 209, 213, 130 S.Ct. 721, 724, 175 L. Ed. 2d 675(2010). Petitioner cannot attest to knowledge of the judge, his Counesl or even the Government, in regards to the fact that there was a full closure of the voir dire which was caused by the United States marshals actively denying access to the courtroom throughout the entirety of the voir dire and jury selection process in the instant case, however, even if the courtroom was closed because of inattention by the judge, courts have expressed concern in the past where a court officer's unauthorized closure of a courtroom impeded public access. That the courtroom closure was the result of inaction by the judge, rather than an affirmative order, is not dispositive. (Whether the closure was intentional or inadvertent is constitutionally irrelevent.")(quoting Walton v. Briley, 361 F .3d 431, 433(7th Cir. 2004). What matters is that the public was barred. (citing Martineau v. Perrin, 601 F.2d 1196, 1200(1st Cir. 1979), for the proposition that the Sixth Amendment is implicated when marshals lock a courtroom without authorization). Owens v. United States, 483 F.3d 48(1st Cir. 2007). The original order for the closure in the instant case came from the McBryde and then was continued, either with or without McBryde's knowledge, by the United States marshals when the marshals kept the courtroom doors locked and barred access to Petitioner's family as well as the public in general. Petitioner has made an attempt to unseal the voir dire transcript on or about January - July of 2015. In Waller, over the defendant's objection, the court granted the motion and the court excluded the public from the courtroom for seven days while it conducted a hearing on the motion to suppress. In the instant case, there was no motion by any party, to close the courtroom, the courtroom was closed by McBryde for seating purposes of the jury panel. Counsel was either ineffective in failing to object to the

closure of the courtroom due to the fact that there were plenty of seats available even after the jury pool entered the courtroom and was seated. Petitioner estimates that there were at least 20 seats still available after the jury pool was seated, not including the seats available in the jury box or counsel was unaware of the full closure because counsel was unaware of the fact that the United States marshals barring access to the courtroom. Futhermore, Counsel either rendered ineffective assistance by failing to bring the issue of full closure up on Petitioner's direct appeal or didn't believe court had been closed because court had sealed the transcript for the voir dire. Petitioner's sister, at the request of Petitioner, had informed Appellate Counsel that there had been a closure but Counsel still failed to argue the complete closure on direct appeal, thereby rendering ineffective assitance of counsel. Had Counsel objected at the trial level, and then subsequently brought the voir closure facts on direct appeal, Petitioner's conviction would have already been vacated and remanded for a new trial due to the full closure because prejudiced is presumed and the error, being structural in nature, isn't treated as harmless by the courts. "Wrongful deprivation of the right to a public trial has been repeatedly characterized as structural error by the United States supreme court. United States v. Marcus, 87 CrL (U.S. 2010), United States v. Gonzalez-Lopez, 548 U.S. 140, 79 CrL 391 (2006), and Neder v. United States, 527 U.S. 1, 65 CrL 275 (1999).

Moreover, a defendant need not prove specific prejudice to obtain relief when the error is structural. Nor does the defendant waive the right to a public trial by failing to object at the time. "Violation of the public trial right, even when not preserved by objection, is presumed prejudicial to the defendant on direct appeal." United States v. Gupta, 699 F.3d 682, 687-88(2d Cir. 2011); United States v. Waters, 627 F.3d 345, 361(9th Cir. 2010); United States v. Agosto-Vega, 617 F.3d 541, 547-48(1st Cir. 2010); State v. Wise, 176 Wn.2d 1, 288 P.3d 1113, 1118 (Wash. 2012)(en banc).

"Complete exclusion of the public from jury selection infringed Petitioner's Six Amendment rights because closure of the courtroom during entirety of voir dire was a plain and obvious error that, as a structural error, effected defendant's substantial rights and seriously impared the Fairness, integrity, or public reputation of the proceedings." United States of America v. Negron-Sostre, 790 F.3d 295(1st Cir. 2015). On Doc. 306, Page 16, Lines 16-23, the following colloquy took place:

The Court: Mr. Weast, I'm sure you can hear me. So I'm advising you at this time to tell me whatever it is that you indicated to your attorney or attorneys that you want to tell me.

**ALL of you leave the courtroom so we'll have room for the jury selection.**

The MARSHAL: **All of you need to get up and leave the courtroom.**

The Court alleged that there was insufficient room in the courtroom for the public, yet, on Doc. 306, Page 21, Lines 12-25, the Court clearly had room to allow government witnesses as well as other Federal Public Defenders who wished to observe the voir dire when the following colloquy took place:

THE COURT: Okay. You can move your chairs on this side of the tables if you would like, and we'll have the jury panel come in.

MS. SALEEM: And, Your Honor, also for claification, Special Agent Womble is the case agent. So we're asking that, even though he is under the rule, that he would be permitted to be in the courtroom.

THE COURT: I excuse him from the rule.

MS. SALEEM: Thank you.

MR. CURTIS: Your Honor, Erin Brennan, an attorney from our office, would like to observe selection. Is that possible?

THE COURT: That's fine. Does she want to come sit up here on this side?

Petitioner was able to see into the courtroom via the video monitor which was setup for him to view the courtroom. Petitioner could see that, after the jury panel was seated, there were plenty of seats available for Petitioner's family members as well as other members of the public, yet the judge chose to have

an in camera voir dire which excluded the Petitioner's family, the public and all members of the public. If Petitioner's Counsel was aware of the complete closure of the courtroom, Counsel was ineffective in their assistance by failing to object to a complete closure that had not been put to a Waller test. Furthermore, Counsel's assistance was ineffective by failing to bring the complete closure of voir dire as an issue on direct appeal for Petitioner. However, if Petitioner's Counsel was unaware of the complete closure, due to the fact that the closure was effected by the United States Marshals who refused access to the court whenever any member of the Petitioner's family attempted to enter the courtroom as well as any general member of the public and agents of the government, in their official capacity, such as Agent Womble nor members of the Federal Public Defender's Office, in their official capacity, qualify as members of the public. This Court should hold an evidentiary hearing to determine whether or not Petitioner's Counsel was, in fact, aware of the complete closure of the courtroom. If Counsel was, in fact, aware of the complete closure, this Court should grant Petitioner's motion to vacate in the interest of justice and the principles of law. However, if Counsel was, in fact, unaware of the complete closure, this Court should summarily Grant Petitioner's motion to vacate since Petitioner has met the prongs of Strickland v. Washington by showing that there was a clear error comitted by completely closing the voir dire for the entirety of the voir dire and jury selection process and that such an error is, in fact, a structural error which does not require the Petitioner to show how he was prejudiced by that complete closure under Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31(1984). Contrary to the Government's claim that the Court sealed the voir dire due to Petitioner's filing claims of damages and the governments fraudulent lies concerning Petitioner allegedly requesting identifying information, this Court did not seal the voir dire transcripts nor make a ruling, that the Petitioner ever received notice of, that the voir dire transcripts were

due to any action taken by the Petitioner. Petitioner did not file the form requesting the voir dire transcript which would fly in the face of the Government's outrageous claim that the Court sealed the voir dire due to actions of the Petitioner. The record doesn't support the Government's outrageous claim that this Court sealed voir dire for reasons related to the Petitioner since He never once requested the transcript for the voir dire. Futhermore, this Court never made any ruling, that Petitioner is aware of, concerning a need "to protect personal infomation of the jurors who served in the trial [and those] who served on the panel from which the jury was selected." The Government makes obsurb claims of a "pattern of filing frivolous claims" but fails to point to even one such "well documented" instance of a "frivolous claim filed by Petitioner in the instant case. The Government must be speaking of the claims in which it has repeatedly chosen to call frivolous, Petitioner's claims of fraud upon the court, by calling such claims frivolous, such as Petitioner's claim that of outright forgery on government documents by the government thereby placing the Petitioner in the position of a surety which has damaged Petitioner irreparably.

FIVE LEVEL ENHANCEMENT

The Government again fails to comprehend the Petitioner's claim regarding counsel's ineffective assistance by failing to argue the inapplicability of USSG § 2G2.2(b)(3)(B). Cousel did in fact argue that the enhancement under USSG 2G2.2 (b)(3)(B) did not apply in the instant case under the Spriggs Court determination that even where there is distribution, it nonetheless concluded that the district court erred in applying the five level increase because there was no evidence that there was a transaction (i.e. exchanging child pornography with another user) for "a thing of value." United States v. Spriggs, 666 F.3d 1284, 1286(11th Cir. 2012). However, on appeal, Counsel failed to mention this same error, which would have proven to be an error made by the court in applying the five level increase in the instant case because there was no evidence of a "transaction" (i.e., exchanging child pornography with another user). Had Counsel made the requisite argument

concerning the lack of the transaction, on appeal for the Petitioner, the court would have agreed under Spriggs, that Petitioner's case showed no evidence of a "transaction" to support the finding of "trading for a thing of value" and would have vacated Petitioner's sentence for resentencing without the five-point increase. The failure to argue said five-point enhancement under USSG 2G2.2(b)(3)(B) is ineffective assistance of counsel when the outcome of the sentencing would have been a lesser sentence had it been mentioned on appeal. Futhermore, the Sprigg's court explained that the guidelines contemplate a transaction conducted for valuable consideration, not free access, to receive the five-level increase in § 2G2.2(b)(3)(B). United States v. Spriggs, 666 F.3d 1284, 1286 (11th Cir. 2012). Therefore, Petitioner's Counsel was, indeed, ineffective in his assistance as Counsel by failing to argue the Five-level Enhancement under USSG 2G2.2(b)(3)(B) because had Counsel argued the error on appeal, the court would have vacated Petitioner's sentence based on said error.

INEFFECTIVE ASSISTANCE OF COUNSEL
FAILURE TO OBJECT TO LIMITED QUESTIONING OF EXPERT WITNESS

Petitioner again points to the Government's obvious misunderstanding of the issue for which Petitioner is actually bringing in his motion. Petitioner isn't attempting to relitigate the court's error in refusing to allow defense counsel to question the defense's computer expert regarding possible viruses on his computer, rather, Petitioner's claim is that defense counsel was ineffective in his assistance as counsel by failing to object to the denial of a defense by the court when the court refused to allow counsel to ask the defense's expert witness questions regarding the multiple viruses as well as malware which were found on Petitioner's computer and were plausibly the explanation for where the child pornography had come from which was found on petitioner's computer. Looking at the transcript from the trial, one can see that the court did not understand the difference between altered images and hacking/remote access to a

vulnerable computer. On document 315, page 115 of 179, lines 1 through 25 shows that the court did not understand the difference between altered images and hacking/remote access via viruses and malware, as well as the courts denial of petitioner's defense and counsel's failure to object to the denial as shown in the following colloquy:

The Court: Okay. I'll give you four or five questions on that, and that will be the end of it.

Mr. Curtis: Let me be sure I'm clear on the second. I'm allowed to ask him if these images could be altered? Is that what I'm allowed to ask?

The Court: Not these images, can images on computers be altered.

Mr. Curtis: Okay.

The Court: Isn't that the same as hacking? Aren't we talking about the same subject?

Mr. Curtis: No. Hacking and remote access would be getting into his computer and actually downloading.

The Court: Okay. Then let's don't get into this business about the photo thing. We've already heard all we want to hear about that.

Mr. Curtis: But I can ask him about whether images that are digitally stored can be altered?

The Court: Yes, I'm talking about four or five questions on each subject, and that's it.

Mr. Curtis: Okay. Okay. All right. Thank you, your honor. I was thinking if I needed to put an objection --

The Reporter: Mr. Curtis --

Mr. Curtis: I'm sorry. I was considering whether I need to --

The Court: What you put of record Friday, the things you want

to ask him, and I'm telling you, you can't ask him any of those things, except what I've told you.

As the record reflects, Mr. Curtis did not actually place an objection on the record when the court was denying the defendant's Sixth Amendment right to present a defense. The Fifth Circuit even stated in their opinion that the failure to object to the limited questioning of the defense's expert witness only allowed for plain error review instead of the standard of review which is used when an objection has been placed at the time of the error and preserved the error for review by the appellate courts. If counsel had indeed objected to the denial of the right to a self defense, and subsequently filed a motion for a new trial, petitioner would have been granted a new trial based on the fact that the court had, indeed denied the Defendant the Sixth Amendment right to a defense since Petitioner's entire defense was predicated on the fact that someone other than Petitioner, had managed to either hack or gain remote access to his computer and thus, downloaded the images of child pornography onto the laptop. Therefore, the court should grant petitioner's writ of habeas corpus in the nature of a motion to vacate, set aside, or correct a sentence due to the ineffective assistance of counsel by failing to object to the denial of the Sixth Amendment right to a defense when the court specifically stated that counsel could not question the defense's expert regarding the multiple viruses and malware found on the defendant's computer which could have been used as a means of hacking and/or remotely accessing Petitioner's laptop and downloading the child pornography which was found on the laptop and external hard-drive.

Counsel was ineffective in failing to point to the evidence that was provided the government which showed that Petitioner's computer had approximately (12) twelve viruses and malware vulnerabilities on the computer which could very easily be used to hack or remotely access and take control of the Petitioner's computer without his knowledge. Counsel was clearly ineffective when, as the fifth circuit points out in their ruling on this case, "we review for plain error only," because had counsel not failed to object, the appellate court would have used the de novo standard in order to determine if Petitioner had been denied his Sixth Amendment right to present a defense. Therefore, the court should vacate, set aside Petitioner's conviction in the interest of justice and to prevent a manifest injustice from standing in Petitioner's case because contrary to the opinion issued in this case, Counsel had not covered the topics of the viruses and malware which were located on Petitioner's computer during questioning of the government's expert witness. The court should grant all other equitable relief deemed just and proper.

Failure to Object to Draconian Sentencing or Mention on Direct Appeal

The government maintains that the record proves that after the sentence was imposed, "Weast's counsel object[ed] to the sentence as procedurally and substantively unreasonable for reasons set forth in [counsel's] objections and [in oral argument at sentencing.] The government is correct in their assesment that counsel objected to the sentence as procedurally and substantively unreasonable "for the **reasons set forth in my objections and argued here today."** However, Counsel's objection was based on his objections to the presentence report and was not an objection based on the fact that sentence went far overboard due to the sentence disparities in child pornography cases which, by receiving (30) thirty year sentence, Petitioner was punished far more severely than child rapists. Counsel failed to object based on the fact the sentence could not be located within the permissible decisions and therefore was "substantively unreasonable" since Petitioner's case did not involve being charged with, nor convicted of, "contact offenses." As the Second Circuit pointed out, "Lower courts need to be mindful of sentencing disparities in child pornography cases." United States v. Jenkins, 2017 BL 124267, 2d Cir. No. 14-4295-cr, 4/17/17. In the Jenkins, Jenkins was sentenced to 19 years in prison followed by 25 years of supervised release. In the instance case, Petitioner was sentenced to 240

months for the receipt charge and 120 months for the possession-only offense which were then ran consecutively in order to punish petitioner even further. Counsel failed to object that the sentence was substantively unreasonable due to the fact that at the end of the 360 months of inprisonment, Petitioner would be age 70 and 75 by the end of the 5 years supervised release. Petitioner's counsel then failed to include the argument and/or objection to the sentencing for the foregoing reasons mention herein during petitioner's appeal which further prejudiced petitioner by not having the issue reviewed by the Circuit Court of Appeals for the Fifth Circuit. The fact that petitioner's counsel objected due to the sentence as procedurally and substantively unreasonable "for the reasons set forth in my objects [to the PSR] and argued here today," does not excuse counsel from the duty of objecting to the sentence as procedurally and substantively unreasonable for the shear fact that the sentence punishes petitioner for a "possession-only" offense more severely than "contact" offenses that involve unlawful physical contact with minors and/or child rapists. Therefore, by failing to object and preserve this error for review and then failing to bring this issue for review in petitioner's direct appeal, petitioner was prejudiced by counsel's ineffectiveness and this court should vacate, set aside, or correct the petitioner's sentence in the interest of justice or in the alternative, the court should order an evidentiary hearing.

## Failing to Investigate Competency to Proceed

The government claims that because the court ordered a competency hearing prior to trial, at the government's request, that petitioner's cousel should be excused from investigating petitioner's competency to stand trial even though petitioner had repeatedly stated that he did not understand the nature and cause of the charges. There are multiple instances of Petitioner's inability to understand the nature and cause of the charges he was facing. The following colloquys show undisputed fact from the record and transcripts that petitioner did not understand the nature and cause of the charges. The first colloquy starts on page 7 of 22 of Doc. 108:

The Court: Okay. Do you understand those things, Mr. Weast?

The Defendant: No, sir. If I could, I would like to ask some questions so I could understand more clearly.

The Court: Okay. Listen Closely. I noticed you're reading something as he's talking, so listen closely.

So far he's explained that under the superseding -- Mr. Weast,

come back up to the microphone, so I can see that you're listening instead of reading.

So far he's explained that your -- under the superseding indictment, if you were to be convicted of these offenses, you would be subject to a term of imprisonment of 30 years; plus, you would be subject to having to pay a fine of a total of $500,000; plus, you would be subject to service of -- being supervised for the rest of your life.

Now, do you understand those are the penalties you are subjecting yourself to, if --

The Defendant: I --

The Court:-- you're convicted of the offenses charged by Counts 1 and 2 of the superseding indictment?

The Defendant: Your honor, am I entitled to a -- to a fair hearing in this -- courtroom?

The Court: I'm simply asking if you understand that.

The Defendant: I'm asking if I'm entitled to a fair hearing.

The Court: Yes, you're entitled to a fair hearing, but --

The Defendant: Okay. I --

The Court: -- at this time, we're going to --

The Defendant: May I ask one more question?

The Court: Yes. You're entitled to --

The Defendant: Am I presumed innocent of these charges, sir?

The Court: Yes, you're presumed innocent of these charges.

The Defendant: Am I --

The Court: Now, that's the last -- that's the last interruption I want to have from you.

The Defendant: I'm not trying to interrupt, sir. I'm just **trying to understand.**

The Court: You are interrupting, and I don't want anymore interruptions. And I'm going to ask you again: Do you understand --

The Defendant: **No, sir, I do not understand what -- because I'm not understanding** if I'm presumed innocent of all of the elements of those charges.

And again on Doc. 110, Page 26 of 49, the following colloquy took place:

The Court: Okay. Do you have anything else, Mr. Weast, you wish to ask him?

The Defendant: Like I said, I'm -- I don't even understand why we're here. Why are we here, sir? Because I'm sitting here in a room away from the courtroom, and you're having this mock thing that you've got going here. I move to -- for you to recuse yourself, Judge, because you are clearly biased in these matters, and you've proven that by practicing law from the bench

bench, and you're the one that said to the -- I'm not sure who it was because Aisha Saleem did not show up for the government that, but you're the one that put the thought in his head to file this motion for a competency hearing.
And I move that you --, sir, need to take yourself off this case because you're clearly biased and emphatic because you have done nothing but --whenever Aisha Saleem filed for the government, you ruled on this motion way before I had a chance to even put in a response to it as we, the people, as we the sovereign people sitting right here, I'm sorry if it doesn't bode well with all the people that are sitting here from the Brittish government, but that is the way it goes here in the United States. We are sovereign as --as of the Treaty of Peace 1783, **no I'm not sure what we're doing here.**

And again on Doc. 110, page 38 of 49, the following cooloquy took place:

The Defendant: How am I being disruptive, sir? Because I am asking questions?

"We uphold a guilty plea on habeas review when it is entered knowingly, voluntarily, and intelligently-that is, when the defendant understands the charge and it's consequences. 'A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt. A defendant understands the consequences of his guilty plea with respect to sentencing if he knows 'the maximum prison term and fine for the offense charge.'" Trotter v. Vannoy, 2017 U.S. App. LEXIS 10146(5th Cir. 2017). In this case, the Petitioner maintains that he did not understand how [he] went from facing a maximum sentence of (10) ten years to a maximum sentence of (30) thirty years, therefore Petitioner did not understand the consequences of going to trial. Trotter v. Vannoy proves that a defendant who is pleading guilty is afforded the right to understand the consequences of pleading guilty, therefore, a defendant who goes to trial has at least an equal right to to be informed of, and understand the consequences of a going to trial with regards to how much time he potentially faces as well as having counsel advise defendant of how they went from facing a maximum of (10) ten years to facing a maximum of (30) thirty years. The record clearly shows, as stated above, that the Petitioner did not understand or comprehend the nature of the offense nor the maximum amount of time or maximum fine involved. Therefore, the court should vacate, set aside, or correct the sentence in this case to prevent a manifest injustice from standing without a remedy and all other equitable remedies which this court deems just and proper.

Refusing to Allow Attorneys to Withdraw

In ground five, the government points to the record which the government claims shows that counsel attempted to withdraw based on Weast's repeated requests to engage in self-representation, which the court denied [in a thorough and detailed order after it conducted numerous hearings on the matter.] Petitioner did not request to represent himself. Petitioner fired counsel in a letter sent both to the court as well as to counsel and demanded that he be allowed to present himself without counsel. The court plainly erred in refusing to allow petitioner to represent himself and **"forcing a lawyer upon the defendant."** Petitioner points to the supreme court of the united states opinion which states, "the court recognized that the Sixth Amendment right to the assistance of counsel implicitly embodies a 'correlative right to dispense with a lawyer's help.'" Adams v. United States ex rel. McCann, 317 US 269, 279, 87 L. Ed. 268, 63 S. Ct. 236, 143 ALR 435. Petitioner cannot find, within the record itself, a single instance of an agreement which was made competently and intelligently by Petitioner and the court, that petitioner waived his constitutional right to conduct his own defense through presenting himself and his case. The court in the Adams case did recognize, albeit in dictum, an affirmative right of self-representation. "The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. The rest on considerations that go to the substance of an accused's position before the law...."

"...What were contrived as protections for the accused should not be turned into fetters.... To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great constitutional safeguards by treating them as empty verbalisms." Adams v. United States ex rel. McCann, 317 US 269, 87 L.Ed. 268, 63 S.Ct. 236, 143 ALR 435.

The government does not point to any part of the record showing that petitioner knowingly and voluntarily waived the right of self representation nor does the government point to any portion of the record showing that petitioner understood the nature of the constitutional protections [he] was allegedly waiving. In fact, the government agrees that the record "shows that counsel attempted to withdraw based on Weast's repeated requests to engage in self-representation, which the court denied." In denying petitioner's request to present [his] own case, the court also denied petitioner the sixth amend-

ment right to not have a lawyer forced upon him as explained by the supreme court of the united states in Adams v. United States ex rel. McCann. Futhermore, as the Fifth circuit stated in United States v. Gunselman, 643 Fed. Appx. 348 (5th Cir. 2016) "The defendant must **understand the nature of the constitutional protections [he] is waiving."** Petitioner did not at any point understand the nature of the constitutional protections for which the court and the government alike, claim that petitioner waived. As a matter of fact, the undisputed record proves that petitioner was repeatedly accused of "interrupting simply because he chose to ask the court questions in an attempt to understand what the nature of the charges was as well as the cause of the proceedings. The record further proves that petitioner was under threat and duress as well as being coerced by the United States Marshals who kept threatening petitioner as well as physically assaulted petitioner while petitioner was attempting to communicate with the court as shown on Doc. 108, Page 15 of 22:

The Court: Well, why don't we do it 2:00 Thursday.

The Defendant: I object to this, to this manner of -- and, Your Honor, I would like this court to take judicial notice of the entire Constitution of the United States, including all of the Bill of Rights, which this court is supposed to be upholding and protecting.

I've been threatened by the guard standing behind me over here --

Spectator: Yeah.

The Defendant: -- and I take exception to be threatened by the guards while I'm in a hearing that **I'm supposed to have a right to.**

Spectator: Yeah.

The Court: You're supposed to stand up when you're addressing the court, Mr. Weast.

The Defendant: I was made to sit down, sir.

The foregoing colloquy took place on lines 8 through 22 of Doc. 108, Page 15 of 22 and shows undisputable proof that petitioner was being threatened, coerced and was under threat and duress during the Motion to Subsistute Attorney. Further proof is found in the record on Document 110, pages 4, Lines 16 through 23 wherein the following was stated by the petitioner:

The Defendant: Sir, the first thing I'm going to ask you is if you can tell your goons over here to get off my case, quit threatening me, and quit trying to force me into doing things that I don't consent to. That would be the first thing that I would like to put on the record here today, is

that these guys -- this guy just physically put his hands on me. He has no right to do so. I do not consent to anything this court is doing.

Continued on Doc. 110, Page 5 of 49, lines 23 through 25 wherein the following took place on the record:

(Mr. Weast beginning to stand)

The Defendant: Tell your goon to get his hands off me, sir.

And then continued on Doc. 110, Page 6 of 49, lines 4 through 6 and 21 through 25 wherein the following took place on the record:

The Defendant: I'd like to put this on the record, that I'm being forced by this guy here.

What's your name, sir? What's your name?

The Defendant: No, we're not sir. You are here for a hearing that I am being forced to be here for. I just got drug from up there -- down there at the -- at this cell down here. Everything in this entire matter has been forceful. I have not once been here on my own accord, not once.

Again on Doc. 110, Page 7 of 49, Line 25 and then continued on Page 8, Lines 1 through 10, wherein the following colloquy took place:

The Court: Does the marshal service have a means of gagging a defendant?

The Defendant: What, you think that because you gag me and force me to do -- into all this stuff you're trying to do, that that somehow is going to give you jurisdiction over me, sir?

The Court: Does the marshal service have a means of gagging him, so we can proceed?

Mr. Thompson: Your Honor, I'll have -- I'd have to have a discussion. I'd ask that I might be able to speak with you about that and perhaps recess for 10 minutes.

The foregoing portions of the transcripts of the record, show proof of the fact that petitioner was under a constant state of threat and duress while he was allegedly being allowed to represent himself. The marshals threatened petitioner on numerous occassions and if petitioner needs to show those occassions, petitioner's family can definitely write affidavits in support of the fact that petitioner was threatened by the marshals and was in a constant state of threat and duress which is why petitioner acted more irrationally the more and more [he] was put under threat and duress. Therefore, the court should vacate, set aside petitioner's conviction(s) due to the fact that the judge clearly erred in denying petitioner his right to present his own defense as well as forcing a lawyer upon the petitioner which would be a manifest injustice if left unchecked. Petitioner also asks the court

to grant all other equitable relief which the court deems just and proper in this case.

Double Jeopardy

The government claims that petitioner's convictions do not violate double jeopardy because the convictions were based on different images that " he possessed and received on different dates." However, the government does not take into account the fact that 2252A(a)(5)(B) does not charge possession of a visual depiction of child pornography and instead charges possession of material which contained an image of child pornography which would mean all images contained on that matter (i.e. computer, external hard drive, flash drive, CD, etc.) would account for the one single instance of possession of material which contained an image of child pornography and not possession of individual images possessed on allegedly different dates. The receipt charge in this instance would also rely on the same images which were allegedly possessed on the same matter for which both the possession and receipt relied on in the instant case. Therefore, as the court I am sure would agree, the possession and receipt charges do not stem from images allegedly possessed on different dates since possession of the matter is entirely different than being charged with possession of the actual individual images. Quoting directly from the Third Superseding indictment, "did knowingly possess **material** that contains an image of child pornography..." which is for the charge of 18 U.S.C. §§2252A(a)(5)(B). Under the receipt charge, the government is asking the court to sustain a conviction for receipt based on the same images which are part of the possession charge. The government states in their response, that Petitioner's "claim is meritless because Weast's convictions were based on different images that he possessed and received on different dates." Contrary to the government's argument however, the Fifth Circuit has "in deciding whether an indictment is multiplicitious, we look to 'whether separate and distinct prohibited acts, made punishable by law, have been committed.' United States v. Shaid, 730 F.2d 225, 231(5th Cir. 1984)(quoting Bins v. United States, 331 F.2d 390, 393(5th Cir. 1964). To do so, we must first determine the allowable unit of prosecution, see United States, v. Reedy, 304 F.3d 358, 365 (5th Cir. 2002)(quoting United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221, 73 S. Ct. 227, 97 L. Ed. 260 (1952)), which is the actus reus of the defendant, United States v. Prestenbach, 230 F.3d 780, 783 (5th Cir. 2000)."

In the instant case, Petitioner was charged under Section 2252A(a)(5)(B) which proscribes "knowingly possess[ing] any book, magazine, periodical, film, videotape, computer disk, or any other material that **contains an image** of child pornography...." Petitioner was not charged for possessing the actual images which were found on the external hard drive but instead was charged for possess[ing] the external hard drive which contained the images. The receipt charge stemmed from a video which was also on the external hard drive where the images were found. In the Prestenbach case, "the Defendant was convicted on four counts for possessing four altered money orders in a bottle, in violation of 18 U.S.C. § 494, which made it a crime to 'knowingly possess...any such false, forged, altered, or counterfeited writing.' In Prestenbach, only a single act of possession was alleged. 230 F.3d at 783. The Fifth Circuit reversed the conviction, holding: where 'contraband is possessed at a single place and time, there is a single act of possession and a single crime.' 'Keeping four altered money orders in a...bottle is one action, and therefore one crime.' Notably, however, Prestenbach also stated: had 'the government proved separate acts leading to...possession of the altered money orders, it [would be]...a different story.'"

"Statutes punishing the possession of firearms by felons lend similar support. Although 18 U.S.C. §922(h) punishes the 'possess[ion]' or'receipt' of 'any firearm or ammunition' traveling through interstate commerce, the 'firearms themselves [are not] allowable units of prosecution, unless they were received at different time and **stored in separate places.'** United States v. Hodges, 628 F.2d 350, 352 (5th Cir. 1980)(emphasis added); see also United States v. Berry, 977 F.2d 915, 920 (5th Cir. 1992)(simultaneous possession of firearms and ammunition can sustain multiple violations of 18 U.S.C. §922 if firearms were obtained at different times or stored in separate places). Congress chose not to punish the "undifferentiated possession or receipt of multiple firearms...more severely than the possession or receipt of a single firearm." Hodges, 628 F.2d at 352(emphasis added). But again, a defendant could be charged with multiple violations of the statute for receipt or possession of different firearms at different time. United States v. Planck, 493 F.3d 501 504 (5th Cir. 2007).

Where a defendant has a single envelope or book or magazine containing many images of minors engaging in sexual activity, the government often should charge only a single count. Reedy, 304 F.3d at 367. In the instant case, Petitioner

was charged for possessing an external hard drive which contained both the images constituting the charge of possession in violation of 18 U.S.C. §2252A (a)(5)(B) and a video which was found on the same external hard drive which was then used to charge Petitioner with receipt in violation of 18 U.S.C. 2252A(a)(2)(A). The government contends that the images were possessed and received on different dates which the government contends should, in itself, be reason for denying Petitioner's claim of double jeopardy. However, as the Fifth Circuit stated in United States v. Planck as well as many other cases from the Fifth Circuit and mentioned above, the images and video were all found on the same external hard drive and therefore cannot sustain a conviction of both possession and receipt. The test in the instant case isn't whether the images were downloaded on separate dates since the possession charge relies on the images, as a whole, possessed on the external hard drive and then allowing the government to come in and use the same evidence which was used for the possession of the images, individually and then charged with receipt of the video individually, then the government would be correct in their theory of possessing and receiving on separate dates but that is not the case in the instant case. Therefore, this court should grant petitioner's Writ of Habeas Corpus in the Nature of a Motion to Vacate, Set Aside, or Correct a Sentence as well as grant all other equitable relief which the judge finds just and proper. To let these convictions stand as separate counts would go against the Fifth Circuit's precedents in multiple cases and would be a manifest injustice.

Respectfully,

By: ______________________________

Christopher Robert: Weast, Agent
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 26525

Petitioner hereby invokes the prison mailbox rule and declares, certifies, and affirms that he placed a copy of this writ of habeas corpus in the nature of a motion to vacate, set aside, or correct a sentence, addressed to the clerk, 501 west tenth street, room 301, fort worth, texas [76102]. Petitioner certifies that he placed a copy in the prison mailbox on January 16, 2018.

I, Christopher Robert Weast, hereby certify under penalty of perjury pursuant to Title 28 U.S.C. §1746 the aforementioned as true and correct.

January 16, 2018
Dated

By: Christopher Robert
Agent

I cerify that on January 16, 2018, I filed this response with the clerk of court for the court of the united states. I also certify that a copy of this reply was served on timothy w. funnell, 801 cherry street, suite 1700, fort worth, texas [76102], by certified mail. I also certify that I dropped both copies of this motion in the prison mailbox on January 16, 2018.

January 16, 2018

By: Christopher Robert
Agent

Christopher Robert: Weast
47797177
c/o temporary post location
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 26525

RECEIVED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION
2018 JAN 22 PM 2:24
CLERK OF COURT

clerk
court of the united states
501 west tenth street, room 301
fort worth, texas 76102

RECEIVED
9 10 11 12 AM PM 1 2 3 4 5 6 7 8

FCC Hazelton
Hazelton, WV

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another address, please return the enclosure to the above address.